UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
DOCKET NO. 2:13-cv-00038-GCM

| | |
|---|---|
| RITA WARD FOX, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CAROLYN W. COLVIN, Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court upon Plaintiff's Motion for Summary Judgment (Doc. No. 12) and the Commissioner's Motion for Summary Judgment (Doc. No. 14). Having carefully considered such motions and reviewed the record, the Court enters the following findings, conclusions, and order.

**FINDINGS AND CONCLUSIONS**

**I.    Administrative History**

Plaintiff filed an application for disability insurance benefits on August 28, 2007, alleging a disability onset date of October 1, 2006. Tr. at 19, 347-49. The Commissioner originally denied those claims on November 12, 2007, and again after reconsideration on April 4, 2008. Tr. at 297-300, 303-06. Subsequently, on May 13, 2008, Plaintiff timely filed for a hearing before an Administrative Law Judge ("ALJ"), and ALJ Gregory M. Wilson heard the case on October 1, 2009 in Bryson City, North Carolina. Tr. at 307-08, 134-65.

1

The ALJ determined that Plaintiff was not disabled, and on August 13, 2011, the Appeals Council remanded the case back to the ALJ. Tr. at 290-93. The ALJ again denied Plaintiff's application after a second hearing, which took place on February 8, 2012. Tr. at 16-72. At this time, the Plaintiff amended her alleged onset date to January 1, 2009. Tr. at 168. The Appeals Council denied Plaintiff's request for another review of the ALJ's decision on August 30, 2013. Tr. at 14-15, 1-9. The ALJ's decision thus became the final decision of the Commissioner of Social Security. Plaintiff timely filed this action on October 14, 2013 (Doc. No. 1), and the parties' motions are now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. Factual Background

Because it appears that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Legal Standard

The Social Security Act, 42 U.S.C. § 405(g), limits this Court's review of a final decision of the Commissioner to whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence which a reasoning mind might accept as adequate to support a conclusion" and is "more than a mere scintilla . . . , but may be somewhat less than a preponderance." *Id*. at 1456; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The very language of section 405(g) precludes the Court from reviewing a final decision of the Commissioner *de novo*; it is the responsibility of the ALJ and not this Court to make findings of fact and to resolve conflicts of evidence. *See* 42 U.S.C. § 405(g); *Smith v. Schweiker*, 795 F.2d

343, 345 (4th Cir. 1986); *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court cannot substitute its judgment for that of the Commissioner, even if the Court would have decided differently, so long as the ALJ's decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456; *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

(1) Whether the claimant is engaged in substantial gainful activity;

(2) Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

(3) Whether the claimant's impairment or combination of impairments meets or medically equals one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) Whether the claimant has the residual functional capacity ("RFC") to perform the requirements of his past relevant work; and

(5) Whether the claimant is able to do any other work, considering his RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v). In this case, the ALJ determined Plaintiff was not disabled at the fifth step of the sequential evaluation process.

## IV. Discussion

Specifically, the ALJ first concluded that Plaintiff had not engaged in substantial gainful activity since January 1, 2009, the alleged onset date. Tr. at 22. At the second step, the ALJ concluded that Plaintiff suffered from several severe impairments, including degenerative disc disease, fibromyalgia, morbid obesity, trochanteric bursitis, osteoarthritis of her knee and spine,

3

asthma, migraine headaches, intermittent vertigo, anxiety, and depression. *Id.* In addition to the severe impairments, he also found the Plaintiff suffered from non-severe impairments, including restless leg syndrome and tremors. Tr. at 27-28. At the third step, the ALJ found that the Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. at 50.

The ALJ then found that Plaintiff retained the residual functioning capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c). Tr. at 55. In making this finding, the ALJ considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with objective medical evidence, and other evidence, as required by 20 C.F.R. §§ 404.1529 and 416.929. *Id.* While the ALJ found that the Plaintiff's impairments could reasonably be expected to cause some pain or discomfort, he determined that Plaintiff's allegations of pain and the extent of her limitations were not entirely credible. Tr. at 57.

At the fourth step, the ALJ found that Plaintiff could not perform her past relevant work as a loan processor and lawn maintenance assistant. Tr. at 420, 427. However, at the fifth step, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including hand packager, order filler, and sandwich maker. Tr. at 72.

Plaintiff asserts three issues for review—(1) whether the ALJ's RFC determination is supported by substantial evidence; (2) whether the ALJ properly analyzed Plaintiff's credibility in determining the RFC; and (3) whether the ALJ's Step Five finding is supported by substantial evidence. Each is discussed in order.

### 1. The ALJ's RFC determination is supported by substantial evidence.

The ALJ's authority to weigh and reconcile inconsistencies in the evidence extends to opinions from medical sources. *See* 20 C.F.R. § 416.827(c); *Hays*, 907 F.2d at 1456. In the context

4

of treating medical sources such as physicians or psychologists, the Fourth Circuit and the regulations have established that the ALJ can afford significantly less weight to a treating source's opinion if it is inconsistent with other clinical or substantial evidence, or internally inconsistent; i.e., if there is persuasive contrary evidence. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To determine whether the treating source's opinion lacks controlling weight, the ALJ must consider: the length and nature of the treatment relationship; supportability of the opinion; consistency with other opinions; specialization of the physician; and other factors tending to support or contradict the opinion. 20 C.F.R. § 404.1427(c).

Here, Plaintiff contends that the ALJ improperly discounted the opinion from treating neurologist, Dr. Patton. The ALJ specifically took into consideration that Dr. James M. Patton was the Plaintiff's treating physician and that he was also a neurologist. Tr. at 68. However, the ALJ also outlined several inconsistencies in Dr. Patton's opinions that were persuasive in determining not to afford them controlling weight. Though Plaintiff claims Dr. Patton's opinions are supported by his treatment notes, many of these assertions are her own reporting—not objective findings.

For instance, though Dr. Patton determined the Plaintiff could sit and stand combined continuously for two hours and forty-five minutes, he then reported she could sit, stand, and walk for less than two hours in an eight-hour day. Tr. 68. In addition to that report, a progress note from 2011 revealed the Plaintiff's physical conditions were overall normal with no impairment, and her MRI only revealed mild degenerative disc disease. Tr. at 68. Where Dr. Patton noted significant limitations in arms, hands, and fingers, the evidence in the record contradicted that assertion reflecting normal coordination, reflexes, arm swing, and cadence. Tr. at 69. The record revealed that Dr. Patton observed Plaintiff's posture, coordination, and muscle strength as normal during a

5

visit, yet found in his opinion that Plaintiff could never bend or twist at the waist and could occasionally lift less than ten pounds. Tr. at 69. His progress notes indicate that Plaintiff told him the new medication for her severe headaches was an effective abortive treatment, which is inconsistent with his finding that she experienced pain severe enough to frequently interfere with her attention and concentration. Tr. at 69. Additionally, though Dr. Patton initially diagnosed Plaintiff with multiple sclerosis, further testing showed this diagnosis to be uncertain at best. Tr. at 962. The ALJ found several other instances where Dr. Patton's own patient progress reports and medical records did not support the level of disability he indicated in the RFC Questionnaire, thus providing persuasive contradictory evidence of his own opinion.

Moreover, there was other credible evidence in the record that contradicted Dr. Patton's findings. The ALJ afforded significant weight to Dr. Pamela Jessup, the State Agency Medical Consultant. Tr. at 70. Plaintiff contends that the ALJ improperly evaluated this opinion.

If the ALJ does not give the treating physician's opinion controlling weight, he must explain the reasons for giving more weight to the State Agency Medical Consultant. 20 C.F.R. § 404.1572(e)(2)(ii). The ALJ specifically noted that he was aware that evidence from non-examining sources is to be considered opinion evidence, as they do not treat or evaluate the Plaintiff. Tr. at 70. Even so, the ALJ noted that Dr. Jessup's background gave her knowledge of the disability program requirements, as "state agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of medical issues in disability claims under the Act." Tr. at 70; S.S.R. 96-6p, 1996 WL 374180, at *2. He also found her to be familiar with the evidence of record, and that her opinion was supported by said evidence. Tr. at 70.

6

Plaintiff contends that even if significant weight is given to Dr. Jessup, the ALJ still erred in not including in her opinion that Plaintiff was limited to frequent—not constant—fingering. Tr. at 282. However, this is not prejudicial because there is at least one job with a significant number of positions that Plaintiff could obtain. 20 C.F.R. §404.1566(b). To the extent that Dr. Patton's opinion conflicted with Dr. Jessup's opinion, the ALJ was well within his discretion to resolve it as he did.

Lastly, Plaintiff states the ALJ did not have substantial evidence for his RFC determination because he improperly gave great weight to the opinion of Medical Expert Dr. Alan J. Coleman. The ALJ specifically noted that Dr. Coleman was the only licensed physician who reviewed the entire evidentiary record, and that his testimony, under oath and subject to cross-examination by Plaintiff's counsel, was well-reasoned and persuasive. Tr. at 64.

Furthermore, Plaintiff contends Dr. Coleman never expressed an opinion regarding her work-related abilities, and that he never disagreed with Dr. Patton's opinion. Yet, Dr. Coleman offered several references indicating his assessments of her ability to work. He concluded that there were no medical signs or laboratory findings on physical examination that corroborated Plaintiff's alleged symptoms, or allowed for a diagnosis that explained what was occurring. Tr. at 183. He also noted that Plaintiff had many somatic symptoms, but no real diagnosis other than her doctors encouraging her to be active. *Id*. The only thing Dr. Coleman noted as to a decrease in physical ability was that the Plaintiff had degenerative changes one would expect to find in a middle-aged person with a herniated disc. Tr. at 182. Most importantly, he summarized his findings by concluding that there was no evidence in the medical record that would preclude Plaintiff from functioning at least at a sedentary RFC—in disagreement with Dr. Patton's opinion

that Plaintiff was limited to less than sedentary work. Tr. at 187, 1382-85.

For these reasons, the Court finds that the ALJ's findings concerning the weight of Dr. Patton's, Dr. Jessup's, and Dr. Coleman's opinions were proper, and that the RFC determination is supported by substantial evidence.

2. **The ALJ properly analyzed Plaintiff's credibility in determining the RFC.**

The Fourth Circuit has established that it is within the province of the ALJ to reconcile inconsistencies in the evidence, that the claimant bears the risk of non-persuasion, and that the ALJ's determinations concerning credibility are to be given "great weight." *Hays*, 907 F.2d at 1456; *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). The Fourth Circuit has also set out a two-step framework for determining the severity of a claimant's impairments. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Plaintiff takes issue with the ALJ's determinations at *Craig*'s second step, which requires the ALJ to evaluate the intensity and persistence of the claimant's pain and how that affects her ability to work. *Id.* at 595.

At the second step, the lack of objective medical evidence is not determinative, and a claimant's subjective perception of pain and other symptoms can be sufficient to support an ALJ's finding of disability. *Hines v. Barnhart*, 453 F.3d 559, 564-65 (4th Cir. 2006). However, *Hines* also stated that objective evidence can be crucial in an ALJ's evaluation of the intensity and persistence of the claimant's symptoms, and to the extent that a claimant's complaints are inconsistent with the available evidence, the ALJ need not accept them. *See id.* at 565, n.3 (citing *Craig*, 76 F.3d at 595).

When Plaintiff's allegations of pain are compared to the objective medical evidence, the record reveals that substantial evidence supports the ALJ's credibility analysis. First, Plaintiff contends that the ALJ misrepresented the evidence on record pertaining to her migraine headaches. The ALJ specifically noted her testimony that she was diagnosed by a neurologist with migraines, and had them once or twice a week. Tr. at 57. However, he also noted the overall inconsistencies in her reports to her physicians. Tr. at 58. The record provided substantial evidence that the Plaintiff's migraines were generally controlled with medication. She was no longer having daily headaches on Verapamil. Tr. at 970. There are also several instances in the record where Plaintiff reported to Dr. Ghaussey she was not having headaches. *See* Tr. at 975, 978, 981, 984, 1219, 1224, 1420, 1425, 1432, 1444, 1483, 1503. Further, she reported that Frova was effective therapy for her migraines. Tr. at 967, 1340. The ALJ also noted specific daily activities she was able to perform, such as straightening up the house in 2007, babysitting two young children in 2009, and doing regular exercise in 2009, 2010, and 2011. Tr. at 57.

Second, Plaintiff asserts that the ALJ erred by failing to discuss the observations of the Social Security employees from the field office. Though pursuant to SSR 96-7p, the ALJ is required to consider "any observations about the individual recorded by Social Security Administration (SSA) employees during interviews," the "failure to discuss every specific piece of evidence 'does not establish that [she] failed to consider it.'" *Mitchell v. Astrue*, No. 2:11-CV-56-MR, 2013 WL 678068, at *7 (W.D.N.C. Feb. 25, 2013) (quoting *Elias v. Astrue*, No. 3:07-CV-43, 2008 WL 191662, at *21 (N.D. W.Va. Jan. 22, 2008)). The ALJ noted that he gave careful consideration to the entire record before determining Plaintiff's RFC, and provided lengthy discussion of the evidence on record. In that discussion, he also noted the inconsistency in

9

Plaintiff's statements about her back impairments. Plaintiff complained that she could not lift more than 10-15 pounds. Tr. at 61. However, the ALJ determined the record actually showed she worked in landscape through 2007, informed Dr. Ghaussey she engaged in heavy activity in 2008, and lifted a small child for approximately two weeks while babysitting in March 2009. Tr. at 61. She also reported that she was physically active in July 2009, and all her physicians recommended she increase her exercise. Further, other physicians found she had full range of motion in all areas, no impaired ability to squat and rise, and no clinical basis for her pain. Tr. at 61.

Upon consideration of all the evidence in the record, this Court finds that the ALJ had more than enough evidence in the record upon which to base his decision. As such, this Court finds the ALJ properly analyzed Plaintiff's credibility.

### 3. The ALJ's Step Five finding is supported by substantial evidence.

Once the Plaintiff has shown she cannot go back to her prior work, it is up to the Commissioner to show that there are other jobs in the national economy that she can perform despite her limitations. *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983). The ALJ must demonstrate this through vocational testimony. Here, Plaintiff asserts the Vocational Expert's (VE) testimony is in direct conflict with the *Dictionary of Occupational Titles* (DOT). Tr. at 72. SSR 00-4p requires the ALJ to ask the VE whether her testimony is consistent with the DOT, and whenever the VE's testimony conflicts with information provided in the DOT, the ALJ will obtain a reasonable explanation for the apparent conflict.

Based on the ALJ's determination that Plaintiff is limited to one to two-step non-production work, Plaintiff contends that she is only capable of performing work with a reasoning skill level of one. A level one reasoning position requires the individual to apply common sense

understanding to carrying out simple one or two-step instructions, and dealing with standardized situations with occasional or no variables in or from these situations encountered on the job. *Dictionary of Occupational Titles* 1011 (4th ed. 1991). Plaintiff asserts that this is in conflict with the VE's determination that she could perform the positions of hand packager, order filler, and sandwich maker, which fall under a level two reasoning skill level. The DOT defines level two as work where the individual applies commonsense understanding to carrying out detailed but uninvolved written or oral instructions, and dealing with problems involving a few concrete variables in or from standardized situations. *Id.*

The Plaintiff attempts to equate a particular reasoning level in the DOT with a certain production level determined by the ALJ because they use similar language. However, this is not enough to show an inconsistency between the VE's testimony and the DOT. *See Meissl v. Barnhart*, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005). A functional physical ability to work is different than a reasoning skill to do the physical work. The ALJ found that the evidence in the record supported Plaintiff's ability to complete daily activities that suggest a more complex reasoning level. Tr. at 61. Further, this Court has determined that even the "requirements of GED reasoning level three are consistent with a limitation to simple, unskilled work," which is what the VE classified all three possible jobs as being. Tr. at 204; *Thacker v. Astrue*, 2011 WL 7154218, at *4 (W.D.N.C. Nov. 28, 2011). Essentially meaning, unskilled work can fall into reasoning levels one through three. Thus, there is no inconsistency between the VE's testimony and the information contained in the DOT.

Finally, Plaintiff contends that the ALJ erred in his step five determination based on improperly assessing her RFC and subjective complaints. However, as previously discussed, the

ALJ's RFC and credibility findings are supported by substantial evidence. Thus, for this reason and because there is no inconsistency between the VE's testimony and the information contained in the DOT, this Court finds that Plaintiff has failed to demonstrate error in the ALJ's step five finding.

V. **Conclusion**

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's motion and brief, and Plaintiff's assignments of error. Review of the entire record reveals that the ALJ's decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456; *Coffman*, 829 F.2d at 517. Having found that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *see Hays*, 907 F.2d at 1456, Plaintiff's Motion for Summary Judgment is denied, the Commissioner's Motion for Summary Judgment is granted, and the decision of the Commissioner is affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that

(1) the ALJ's decision is **AFFIRMED**;

(2) the Plaintiff's Motion for Summary Judgment (Doc. No. 12) is **DENIED**;

(3) the Commissioner's Motion for Summary Judgment (Doc. No. 14) is **GRANTED**; and

(4) The Clerk of Court is directed to **CLOSE THIS CASE**.

**SO ORDERED.**

Signed: March 30, 2015

*[signature]*

Graham C. Mullen
United States District Judge